**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

JOHNS MANVILLE CORPORATION, a
Delaware corporation, and JOHNS MANVILLE,
a Delaware corporation,

              Plaintiffs,

    v.

KNAUF INSULATION, LLC, a Delaware
corporation, WALTER A. JOHNSON,
individually, KNAUF INSULATION GMBH, a
German corporation, KNAUF INSULATION
SPRL, a Belgium corporation, KNAUF
INSULATION LIMITED, a United Kingdom
corporation, and GEBR. KNAUF
VERWALTUNGSGESELLSCHAFT KG, a
German corporation,

              Defendants.

---

## COMPLAINT AND JURY TRIAL DEMAND

---

       Plaintiffs Johns Manville Corporation and Johns Manville (collectively "JM"), by way of

Complaint against Defendants Knauf Insulation GmbH, Knauf Insulation, LLC, Knauf Insulation

SPRL, Knauf Insulation Limited, and Gebr. Knauf Verwaltungsgesellschaft KG (collectively

"Knauf") and Defendant Walter A. Johnson ("Johnson") (collectively "Defendants"), allege as

follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement.  Defendants have violated, and continue to violate, the patent laws of the United States, 35 U.S.C. §§ 271 and 281-285, et seq., by infringing U.S. Patent No. 6,266,979 ("the '979 patent").

2.     This is also an action for trade secret misappropriation.  Defendants have misappropriated JM's trade secrets in violation of the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-102(4).

3.     This is also an action for breach of contract.  Johnson breached his employee agreement with Schuller Corporation, now known as Johns Manville Corporation.

4.     This is also an action for breach of implied covenant of good faith and fair dealing.  Johnson breached the implied covenant of good faith and fair dealing inherent in the terms and conditions of his employee agreement with Schuller Corporation, now known as Johns Manville Corporation.

## PARTIES

5.     Plaintiff Johns Manville Corporation is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 717 17th Street, Denver, Colorado 80202.

6.     Plaintiff Johns Manville is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 717 17th Street, Denver, Colorado 80202.

7.     Defendant Knauf Insulation, LLC is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at One Knauf Drive, Shelbyville, Indiana 46176.

8.     Defendant Knauf Insulation GmbH is a foreign limited liability company organized and existing under the laws of the country of Germany, having a principal place of business at Am Bahnhof 7, 97346 Iphofen, Germany.

9.     Defendant Knauf Insulation SPRL is a foreign limited liability company organized and existing under the laws of the country of Belgium, having a principal place of business at Rue de Maestricht 95, 4600 Visé, Belgium.

10.     Defendant Knauf Insulation Limited is a United Kingdom company having a principal place of business in St Helens, Merseyside, United Kingdom.

11.     Defendant Gebr. Knauf Verwaltungsgesellschaft KG is organized and existing under the laws of Germany, having a principal place of business at Am Bahnhof 7, 97346 Iphofen, Germany.

12.     Defendant Walter A. Johnson is an individual who resides in Indiana.  On information and belief, he resides at 5670 Treeline Dr., Columbus, IN 47201-3903.  Johnson was employed by Johns Manville Corporation in Colorado from 1992 to 2007, when he voluntarily terminated his employment.  Johnson then consulted for Johns Manville from 2007 to 2008.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over the patent claims in this action between all of the parties pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.  This Court has

3

supplemental jurisdiction over the remaining claims between all of the parties pursuant to 28 U.S.C § 1367.

14.     This Court has diversity jurisdiction over this action between JM and Johnson pursuant to 28 U.S.C. § 1332(a) because there is diversity of parties, as JM is a citizen of Colorado and Johnson is an Indiana resident, and the amount in controversy exceeds $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction over the remaining claims between JM and Johnson pursuant to 28 U.S.C § 1367.

15.     This Court has diversity jurisdiction over this action between JM and Knauf Insulation GmbH pursuant to 28 U.S.C. § 1332(a) because there is diversity of parties, as JM and Knauf Insulation GmbH are residents of or are incorporated in different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction over the remaining claims between JM and Knauf Insulation GmbH pursuant to 28 U.S.C § 1367.

16.     This Court has diversity jurisdiction over this action between JM and Knauf Insulation, LLC pursuant to 28 U.S.C. § 1332(a) because there is diversity of parties, as JM and Knauf Insulation, LLC are residents of or are incorporated in different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction over the remaining claims between JM and Knauf Insulation, LLC pursuant to 28 U.S.C § 1367.

17.     This Court has diversity jurisdiction over this action between JM and Knauf Insulation SPRL pursuant to 28 U.S.C. § 1332(a) because there is diversity of parties, as JM and Knauf Insulation SPRL are residents of or are incorporated in different states, and the amount in

controversy exceeds $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction over the remaining claims between JM and Knauf Insulation SPRL pursuant to 28 U.S.C § 1367.

18.    This Court has diversity jurisdiction over this action between JM and Knauf Insulation Limited pursuant to 28 U.S.C. § 1332(a) because there is diversity of parties, as JM and Knauf Insulation Limited are residents of or are incorporated in different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction over the remaining claims between JM and Knauf Insulation Limited pursuant to 28 U.S.C § 1367.

19.    This Court has diversity jurisdiction over this action between JM and Gebr. Knauf Verwaltungsgesellschaft KG pursuant to 28 U.S.C. § 1332(a) because there is diversity of parties, as JM and Gebr. Knauf Verwaltungsgesellschaft KG are residents of or are incorporated in different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.  This Court has supplemental jurisdiction over the remaining claims between JM and Gebr. Knauf Verwaltungsgesellschaft KG pursuant to 28 U.S.C § 1367.

20.    This Court has general and specific personal jurisdiction over Johnson pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, and the United States Constitution.  For the fourteen years Johnson was employed by Johns Manville Corporation in Colorado he lived in Colorado.  The confidential and proprietary information that are the subject of this action and which Johnson received as part of his employment relationship with Johns Manville Corporation was developed with the participation of Johnson during his employment at Johns Manville Corporation and maintained by JM and Johnson in Colorado.  The patent and trade

secrets at issue in this case were developed with the participation of Johnson during his employment at Johns Manville Corporation while Johnson was located in Colorado. Johnson was a named inventor on the '979 patent at issue in this action and assigned the '979 patent to Johns Manville International, now known as Johns Manville, in a document signed in Colorado during Johnson's employment at Johns Manville Corporation in Colorado. The employee agreement between Johns Manville Corporation and Johnson was signed by Johnson and Johns Manville Corporation in Colorado, during Johnson's employment at Johns Manville Corporation in Colorado. At all pertinent times, the employee agreement created an ongoing obligation for Johnson to maintain the confidentiality of JM's confidential and proprietary information—including, but not limited to, the confidential and proprietary information at issue in this action and developed with the participation of Johnson, and maintained by JM and Johnson in Colorado. At all pertinent times, insulation made according to the JM-developed trade secrets at issue in this action was and is currently being sold by Knauf in Colorado. In addition, at all pertinent times, insulation made using the JM patented spinner disc at issue in this action was and is currently being sold by Knauf in Colorado. As such, at all pertinent times, many of the activities and harm regarding misappropriation and dissemination of the trade secrets and confidential information at issue in this action, and flowing directly from Johnson's improper acts, have occurred and continue to occur in Colorado. At all pertinent times, JM performs significant research and development regarding its insulation products and its processes for making those products which are the subject of this action in Colorado. In fact, at all pertinent times, Johnson directly participated in many of the research and development activities that are the subject of this action and which arise directly out of Johnson's

employment activities with Johns Manville Corporation while he resided in Colorado. At all pertinent times, JM markets, finances, and otherwise supports its insulation business in Colorado. At all pertinent times, JM sells insulation in Colorado using the JM patented spinner disc at issue in this action and according to the JM trade secrets at issue in this action which were developed and maintained with the participation of Johnson during his employment at Johns Manville Corporation while he was located in Colorado. At all pertinent times, Johnson acted with knowledge that result of his actions would cause harm to JM in Colorado. Further, the breach of Johnson's employee agreement occurred in Colorado.

21.    This Court has personal jurisdiction over Knauf Insulation GmbH pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, and the United States Constitution because, on information and belief, at all pertinent times, Knauf Insulation GmbH actively and regularly engages in business in the State of Colorado, sold and continues to sell products in Colorado, and derived and continues to derive substantial revenue from things used or consumed in the State of Colorado. The JM patent and trade secrets at issue in this action were developed by JM in Colorado. At all pertinent times, insulation made according to the JM trade secrets at issue in this case was and is currently being sold by Knauf in Colorado. In addition, at all pertinent times, insulation made using the JM patented spinner disc at issue in this action was and is currently being sold by Knauf in Colorado. At all pertinent times, many of the activities and harm regarding misappropriation and dissemination of JM trade secrets and JM confidential information occurred in Colorado. Further, at all pertinent times, JM sold and continues to sell insulation in Colorado that was made using the JM patented spinner disc at issue in this action and according to the JM trade secrets at issue in this action. At all pertinent times, many of the

activities and harm regarding misappropriation and dissemination of JM's trade secrets and confidential information occurred in Colorado.  In addition, at all pertinent times, Knauf Insulation GmbH acted with knowledge that result of its actions would cause harm to JM in Colorado.

22.    This Court has personal jurisdiction over Knauf Insulation, LLC pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, and the United States Constitution because, on information and belief, at all pertinent times, Knauf Insulation, LLC actively and regularly engages in business in the State of Colorado, sold and continue to sell products in Colorado, and derived and continue to derive substantial revenue from things used or consumed in the State of Colorado.  The JM patent and trade secrets at issue in this action were developed by JM in Colorado.  At all pertinent times, insulation made according to the JM trade secrets at issue in this action was and is currently being sold by Knauf in Colorado.  In addition, at all pertinent times, insulation made using the JM patented spinner disc at issue in this action was and is currently being sold by Knauf in Colorado.  At all pertinent times, many of the activities and harm regarding misappropriation and dissemination of JM's trade secrets and confidential information occurred in Colorado.  Further, at all pertinent times, JM sold and continues to sell insulation in Colorado using the JM patented spinner disc at issue in this action and according to the JM trade secrets at issue in this action.  At all pertinent times, many of the activities and harm regarding misappropriation and dissemination of JM's trade secrets and confidential information occurred in Colorado.  In addition, at all pertinent times, Knauf Insulation, LLC acted with knowledge that result of its actions would cause harm to JM in Colorado.

23. This Court has personal jurisdiction over Knauf Insulation SPRL pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, and the United States Constitution because, on information and belief, at all pertinent times, Knauf Insulation SPRL actively and regularly engages in business in the State of Colorado, sold and continues to sell products in Colorado, and derived and continues to derive substantial revenue from things used or consumed in the State of Colorado. The JM patent and trade secrets at issue in this action were developed by JM in Colorado. At all pertinent times, insulation made according to the JM trade secrets at issue in this action was and is currently being sold by Knauf in Colorado. In addition, at all pertinent times, insulation made using the JM patented spinner disc at issue in this action was and is currently being sold by Knauf in Colorado. At all pertinent times, many of the activities and harm regarding misappropriation and dissemination of JM's trade secrets and confidential information occurred in Colorado. Further, at all pertinent times, JM sold and continues to sell insulation in Colorado using the JM patented spinner disc at issue in this action and according to the JM trade secrets at issue in this action. At all pertinent times, many of the activities and harm regarding misappropriation and dissemination of JM's trade secrets and confidential information occurred in Colorado. In addition, at all pertinent times, Knauf Insulation, LLC acted with knowledge that result of its actions would cause harm to JM in Colorado.

24. This Court has personal jurisdiction over Knauf Insulation Limited pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, and the United States Constitution because, on information and belief, at all pertinent times, Knauf Insulation Limited actively and regularly engages in business in the State of Colorado, sold and continues to sell products in Colorado, and derived and continues to derive substantial revenue from things used or consumed in the State of

Colorado.  The JM patent and trade secrets at issue in this action were developed in Colorado. At all pertinent times, insulation made according to the JM trade secrets at issue in this action was and is currently being sold by Knauf in Colorado.  In addition, at all pertinent times, insulation made using the JM patented spinner disc at issue in this action was and is currently being sold by Knauf in Colorado.  At all pertinent times, many of the activities and harm regarding misappropriation and dissemination of JM's trade secrets and confidential information occurred in Colorado.  Further, at all pertinent times, JM sold and continues to sell insulation in Colorado using the JM patented spinner disc at issue in this action and according to the JM trade secrets at issue in this action.  At all pertinent times, many of the activities and harm regarding misappropriation and dissemination of trade secrets and confidential information occurred in Colorado.  In addition, at all pertinent times, Knauf Insulation, LLC acted with knowledge that result of its actions would cause harm to JM in Colorado.

25.    This Court has personal jurisdiction over Gebr. Knauf Verwaltungsgesellschaft KG pursuant to the Colorado Long-Arm Statute, C.R.S. § 13-1-124, and the United States Constitution because, on information and belief, at all pertinent times, Gebr. Knauf Verwaltungsgesellschaft KG actively and regularly engages in business in the State of Colorado, sold and continues to sell products in Colorado, and derived and continues to derive substantial revenue from things used or consumed in the State of Colorado.  The JM patent and trade secrets at issue in this action were developed in Colorado.  At all pertinent times, insulation made according to the JM trade secrets at issue in this action was and is currently sold by Knauf in Colorado.  In addition at all pertinent times, insulation made using the JM patented spinner disc at issue in this action was and is currently being sold by Knauf in Colorado.  At all pertinent

times, many of the activities and harm regarding misappropriation and dissemination of JM's trade secrets and confidential information occurred in Colorado.  Further, at all pertinent times, JM sold and continues to sell insulation in Colorado using the JM patented spinner disc at issue in this action and according to the JM trade secrets at issue in this action.  At all pertinent times, many of the activities and harm regarding misappropriation and dissemination of JM's trade secrets and confidential information occurred in Colorado.  In addition, at all pertinent times, Knauf Insulation, LLC acted with knowledge that result of its actions would cause harm to JM in Colorado.

26.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400 because a substantial portion of the events giving rise to the claim occurred in this judicial district.

## BACKGROUND

**I.    JM's Business**

27.    Since its founding over 150 years ago, JM has focused on developing materials to make diverse environments stronger, more durable, and more energy efficient and comfortable. JM manufactures premium-quality building and mechanical insulation, commercial roofing, glass fibers and nonwoven materials for commercial, industrial and residential applications.  JM products are used in a wide variety of industries including building products, aerospace, automotive and transportation, filtration, commercial interiors, waterproofing and wind energy. JM's name has become synonymous with innovation and quality in the building and specialty materials industry.

28.    Through its extensive internal research and development efforts, JM is an innovator of building material solutions.  JM has been a pioneer in the insulation and fiberglass

industry for decades and was an initial innovator of rotary fiberization over 40 years ago. JM has continued to be vigorously engaged in research and development directed to fiberization and spinner disc technology. JM remains a major manufacturer and markets a multitude of thermal and acoustical insulation products directly using the patented spinner disc and trade secret technology that is the subject of this action, with JM's Insulation Systems Division making up a substantial portion of JM's total revenues.

29.     JM has over 7,000 global employees, and provides products to more than 85 countries and operates 44 manufacturing facilities in North America, Europe, and China.

30.     Since 1988, JM's global headquarters has been located in downtown Denver, CO.

31.     JM's main research and development technical center is located in Littleton, CO.

**A.  JM's Patent**

32.     One method of manufacturing insulation is through rotary fiberization. The rotary fiberization process begins by melting dry inorganic materials (e.g., sand) at very high temperatures, and feeding the molten material (e.g., glass) into a "spinner disc," which is spinning at a high rate of speed. A spinner disc has peripheral walls extending from the disc and a plurality of tiny orifices in the wall. The centrifugal force caused by the high speed rotation of the spinner disc forces the glass against the peripheral wall of the spinner disc and through hundreds of tiny orifices in the peripheral wall of the spinner disc. These fine strands of glass, often referred to as fibers, can be collected and manufactured into various insulations, including "fiberglass" products.

33.     For a number of different reasons—including the extremely high temperatures, relatively fast change in temperature, and great pressures the spinner disc is subjected to—the

metallurgical composition of the spinner disc is of critical importance.  Indeed, the alloys used for spinner discs are often considered "super alloys" and have many of the same qualities as alloys used, for example, in jet engine turbine blades.

34.    Because of the extreme conditions in the manufacturing process, the spinner discs have a relatively short service life.  As a result, JM continually sought new compositions and designs of the spinner discs to extend the life and reduce the costs of manufacture to gain a competitive advantage.

35.    In the 1990s, JM was using a spinner disc alloy that was given the unique internal JM designation of "GX4".

36.    Through extensive and methodical research and development and trial and error, JM developed a unique, novel, and nonobvious spinner disc alloy to replace the use of GX4, which was given the unique internal JM designation of "C05".

37.    JM has invested millions of dollars in researching, developing, and creating its own super alloy for use in spinner discs.

38.    On September 2, 1999, Johns Manville International, now known as Johns Manville, timely filed U.S. Patent Application 09/389,005 ("the '005 application") in the U.S. Patent and Trademark Office which described and rightfully claimed JM's C05 alloy as used in a spinner disc.

39.    On June 31, 2001, the '005 application was issued as the '979 patent.

40.    Johns Manville owns the '979 patent.

41.    A complete, true and accurate copy of the '979 patent is attached hereto as Exhibit 1.

42.     The '979 patent is entitled "spinner disc alloy." The '979 patent is directed to a cobalt alloy for spinner discs used in rotary glass fiberization processes and, in particular, to a cobalt alloy which extends the service life of spinner discs used in rotary glass fiberization processes or exhibits some other desirable property related to either the fabrication or use of such spinner discs.

43.     Commercialization of the inventions in the '979 patent created a significant competitive advantage for JM.

44.     The '979 patent has four inventors: Defendant Johnson, Gary W. Smiley, Robert Rushforth, and John Strothers. Each of those inventors assigned the '979 patent to Johns Manville International, now known as Johns Manville.

**B.  JM's Trade Secrets and Confidential Information**

45.     JM protects its confidential and proprietary business and technical information as trade secrets.

46.     JM takes reasonable steps to maintain the confidentiality of its confidential and proprietary information, including but not limited to:

a.      Requiring employees to sign employee agreements that include confidentiality clauses.

b.      Configuring its computer systems to require computer passwords and levels of access established by management of each business unit to access confidential and proprietary information.

    c.      Configuring its computer systems to limit access to its confidential and proprietary information to those with a need-to-know, and those with a need-to-know may access only the information for which they have a need.

    d.      Requiring its vendors to sign nondisclosure agreements so that they cannot share JM's confidential and proprietary information with outside third parties, including, but not limited to, JM's competitors.

    e.      Requiring badge or keycard access to gain entry to buildings and properties.

    f.      Preventing certain employees and the public from viewing certain manufacturing operations involved in the production of insulation.

    g.      Reviewing all marketing material and other photos of JM equipment and processes to ensure that trade secrets are not displayed nor could be inferred.

**C.  Johnson's Employment with JM and Access to JM's Trade Secrets.**

47.      Johnson began employment with Schuller Corporation, now known as Johns Manville Corporation, on or about April 29, 1992.

48.      On or about April 29, 1992, Johnson executed a U.S. and Canada Employee Agreement Form ("Employee Agreement").

49.      The Employee Agreement states in pertinent part:

In consideration of and as a condition of said employment, the undersigned employee agrees:
***
That except as required in his duties to the Company [Schuller Corporation, now known as Johns Manville Corporation], the undersigned employee shall not disclose or use at any time, either during or subsequent to the said employment, any secret or confidential information of the Company or of Manville Corporation [now known as Johns Manville Corporation] or any subsidiary of Manville Corporation (whether or not developed by the undersigned employee) unless he shall first secure the Company's written consent;

15

That the undersigned employee understands that any information, formula, procedure, drawing, device or compilation of data which is used in the Company's business or that of Manville Corporation or of any subsidiary of Manville Corporation and which gives any of them an opportunity to obtain an advantage over competitors who do not know or use it, may constitute secret or confidential information.

50.    For the next 15 years, JM expended significant time and resources to develop and promote Johnson.

51.    In 1992, Johnson was hired as a Senior Research Associate in the Metallurgy Research and Development ("R&D") Department, a position he held until approximately 1997. In approximately 1997, Johnson was a Senior Research Associate for Corporate Research and Development, a position he held until approximately 2004.  In approximately 2004, Johnson was a Senior New Product Development ("NPD") Manager for the Roofing Supply Group ("RSG"). When he resigned in 2007, his title was Senior Technical Manager of the Innovation and Commercialization ("I&C") Department.

52.    Johnson was employed by Johns Manville Corporation from 1992 until 2007. From 1993 until approximately 2004, Johnson was employed at JM's Technical Center located in Littleton, CO.

53.    From 1992 until 2004, Johnson played a significant role in JM's insulation business.  Among other things, Johnson was the named inventor of at least four JM patents related to insulation and spinner discs, including the '979 patent.  Johnson was also aware of and involved in JM's development of confidential and proprietary information relating to insulation and spinner discs, including trade secret manufacturing protocols for making JM spinner discs ("Manufacturing Protocol Trade Secrets"), trade secret information regarding the design (including metallurgical) of JM spinner discs ("Spinner Disc Design Trade Secrets"), and trade

16

secret information regarding the manufacturing methods and protocols used with third party

vendors ("Trade Secrets with Vendors") (collectively "JM Trade Secrets").

54.     Johnson received a computer from Johns Manville Corporation in connection with

his employment from which he could obtain confidential and proprietary information of the

business unit to which he had been granted access for limited use in the course of performing his

regular work-related duties.

55.     Given the nature of Johnson's position, he received access to critical, confidential

and proprietary information regarding research, development, production, strategy and other

matters that JM competitors, the general public, and to which only a few other JM employees

had access.  Johnson also played a significant role in developing the critical, confidential and

proprietary information to which he had access.

56.     In approximately April 2007, Johnson resigned from Johns Manville Corporation.

Johnson then consulted with Johns Manville from May 2007 to May 2008.  The May 21, 2007

Consulting Contract was signed in Colorado and is governed by the laws of the State of

Colorado.

57.     On information and belief, sometime after 2007 Johnson began working for

Knauf.

## II.    Knauf and Johnson's Patent Infringement and Trade Secret Misappropriation

58.     Knauf is a direct competitor of JM in the fiberglass insulation and related

products market.

59.     On information and belief, in approximately June of 2007, Johnson began

working as a paid consultant for Knauf while still living in Colorado.

60.     On information and belief, Johnson is currently an employee of Knauf and has the employee title of Director of Special Projects.

61.     On information and belief, at the time Johnson went to work for Knauf, Knauf did not manufacture spinner discs.

62.     It takes a significant amount of time, research, and know-how to develop and manufacture spinner discs.

63.     On information and belief, Knauf makes and uses a spinner disc alloy that directly infringes Johns Manville's '979 patent.  On information and belief, Knauf refers to the infringing spinner disc alloy as "C05," the JM internal designation for its patented alloy.  In 2014, the C05 designation was seen by multiple JM individuals at multiple times and locations on multiple Knauf labels on tubes that are believed to contain or ship spinner discs.  On information and belief, "C05" indicates a particular metallurgical alloy that when fabricated into a spinner disc directly infringes Johns Manville's '979 patent.

64.     On information and belief, Johnson disclosed and Knauf is using JM's Trade Secrets, including at least, but not limited to, Manufacturing Protocol Trade Secrets and Trade Secrets with Vendors.

65.     On information and belief, Knauf did not manufacture spinner discs prior to employing Johnson, and began manufacturing spinner discs after hiring Johnson.  On information and belief, Knauf purchased spinner discs from third parties in 2007, but started manufacturing its own spinner discs sometime after 2007.

66.     The identity of JM's spinner disc vendors is not publicly available.  In 2014, Johnson was seen in at least one of JM's spinner disc manufacturing vendor's locations.  Also in

2014, Knauf-labeled materials were identified by JM employees in at least one of JM's manufacturing vendor's locations.  As discussed above, on information and belief, Knauf is using the C05 metallurgical alloy to have third-party vendors fabricate spinner discs in direct infringement of Johns Manville's '979 patent.  Also on information and belief, Knauf's use of the C05 alloy includes the use of the JM Trade Secrets, including at least, but not limited to, Manufacturing Protocol Trade Secrets and Trade Secrets with Vendors.

### COUNT I
### Infringement of U.S. Patent No. 6,266,979
### [Against Knauf and Johnson]

67.    JM restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

68.    On information and belief, Defendants have intentionally and willfully infringed and are actively infringing (literally or under the doctrine of equivalents, directly, contributorily, and/or by inducement) one or more of the claims of the '979 patent under 35 U.S.C. §§ 271 and 281-285, *et seq*.

69.    On information and belief, Defendants have been aware of the '979 patent.

70.    JM has been damaged by Defendants' infringement and will suffer irreparable injury unless they are enjoined by this Court.

71.    Defendants' infringement of Johns Manville's patent rights has damaged or will damage JM, entitling JM to an award of lost profits, and not less than a reasonable royalty, as well as damages for willful infringement, in an amount to be determined at trial.

### COUNT II
### Trade Secret Misappropriation
### [Against Knauf and Johnson]

72.    JM restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

73.    JM is the owner of certain trade secrets within the meaning of the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-102(4).

74.    As a pioneer and leader in the insulation industry, JM has spent considerable sums of money, time, and energy in the research and development of the JM Trade Secrets.  JM has a number of valuable trade secrets relating to insulation and spinner discs, including its Manufacturing Protocol Trade Secrets, Spinner Disc Design Trade Secrets, and Trade Secrets with Vendors.

75.    The JM Trade Secrets, maintained by JM as a result of these efforts, are not generally known to the outside public.

76.    The fact that the JM Trade Secrets are kept secret at JM allows JM to maintain a competitive advantage over its competitors and reap the associated rewards in the market place.

77.    JM Trade Secrets are deserving of protection.

78.    JM has made reasonable efforts to keep the JM Trade Secrets confidential and prevent them from disclosure to unauthorized parties outside of JM.

79.    Through his previous employment at Johns Manville Corporation, Johnson is in possession of the JM Trade Secrets, and such information was made available to him under circumstances requiring that he maintain the secrecy of the JM Trade Secrets.

80.    Johnson knew that the information underlying the JM Trade Secrets were trade secrets.  Johnson was also aware that the JM Trade Secrets would be valuable to any competitor of JM and that he had a duty to maintain the secrecy of the JM Trade Secrets.

81.     Knauf would have understood that the information contained within the JM Trade Secrets would be considered a trade secret to JM.  Given Johnson's prior employment and senior position with JM, Knauf would have understood that Johnson was under a duty to maintain the secrecy of the information.

82.     On information and belief, Defendants have misappropriated the JM Trade Secrets in violation of Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101-110, *et seq.*, for the purpose of using and exploiting such information for their own economic interests, without license or permission from JM.

83.     On information and belief, Defendants' misappropriation of the JM Trade Secrets has caused, and will continue to cause, JM irreparable injury and damages for which there is no adequate remedy at law unless Defendants are enjoined by the Court.

84.     On information and belief, in his position at Knauf, Johnson has used his knowledge of the JM Trade Secrets to unlawfully compete.

85.     On information and belief, Johnson has used and inevitably disclosed or will inevitably disclose the JM Trade Secrets in the course of his employment position with Knauf because he is developing or has developed a similar business and similar products for Knauf. The likelihood of inevitable disclosure constitutes threatened disclosure of the JM Trade Secrets.

86.     Johnson's activities, current and threatened, are causing severe irreparable injury to JM, including in the form of loss and diminution of its competitive positions in the marketplace, loss of its ability to offer unique products, and lost opportunities to capitalize on its status in the marketplace, for which there is no adequate remedy at law.  Such activities are also

directly and proximately causing additional significant economic damages to JM in an amount to be proved at trial.

87.    Defendants' misappropriation of the JM Trade Secrets has damaged or will damage JM, entitling JM to an award of actual and consequential damages, as well as damages for unjust enrichment, in an amount to be determined at trial.

88.    Defendants' misappropriation of JM Trade Secrets is attended by circumstances of fraud, malice, or willful and wanton disregard of JM's rights, thereby entitling JM to an award of exemplary damages.

**COUNT III**
**Breach of Contract**
**[Against Johnson]**

89.    JM restates and incorporates by reference the allegations set forth in the paragraphs set forth above as though fully set forth herein.

90.    On or about April 29, 1992, Johnson executed an Employee Agreement with Johns Manville Corporation.

91.    In the Employee Agreement, Johnson agreed, among other things, that he:

shall not disclose or use at any time, either during or subsequent to the said employment, any secret or confidential information of the Company [Schuller Corporation, now known as Johns Manville Corporation] or of Manville Corporation or any subsidiary of Manville Corporation [now known as Johns Manville Corporation] (whether or not developed by the undersigned employee) unless he shall first secure the Company's written consent.

92.    Johnson voluntarily entered into the Employee Agreement with Johns Manville Corporation.

93.    The Employee Agreement is valid, enforceable, and supported by adequate consideration.

94.     Johnson owed JM the contractual duties set forth in the Employee Agreement.

95.     Johnson failed to comply with his promise that he "shall not disclose or use at any time, either during or subsequent to the said employment, any secret or confidential information of the Company [Schuller Corporation, now known as Johns Manville Corporation] or of Manville Corporation [now known as Johns Manville Corporation] or any subsidiary of Manville Corporation (whether or not developed by the undersigned employee) unless he shall first secure the Company's written consent."

96.     Johns Manville Corporation fully performed its obligations under the Employee Agreement and has met all conditions precedent to the enforcement of the Employee Agreement.

97.     As a result of the actions complained of herein, Johnson has breached the Employee Agreement.

98.     As a direct and proximate result of said acts, JM has suffered damages that were foreseeable by Johnson in an amount to be determined at trial.

**COUNT IV**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**[Against Johnson]**

99.     JM restates and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth herein.

100.    On or about April 29, 1992, Johnson executed an Employee Agreement with Johns Manville Corporation.  That Employee Agreement required Johnson to act in good faith and deal fairly in performing the terms of the contract.

101.    Johns Manville Corporation fully performed its obligations under the Employee Agreement and has met all conditions precedent to the enforcement of the Employee Agreement.

102.    On information and belief, Johnson did not act in good faith in his dealings with JM.  Without good faith and through conscious and deliberate acts, Johnson utilized the JM Trade Secrets with a competitor of JM.

103.    Johnson's actions were not consistent with and were contrary to the agreed common purpose of the Employee Agreement or with the reasonable expectations of JM.

104.    As a result of this conduct, Johnson has breached the implied covenant of good faith and fair dealing contained in the Employee Agreement and has frustrated the purpose of the Employee Agreement.  Johnson's conduct has disappointed the reasonable expectations of JM, thereby depriving JM of the benefits of the Employee Agreement.

105.    As a direct and proximate cause of Johnson's breach, JM has been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, JM respectfully requests that the Court enter judgment in its favor granting the following relief:

A.    Enter judgment of infringement of the '979 patent in favor of JM against Defendants;

B.    Enter an Order preliminarily and permanently enjoining Defendants and Defendants' officers, agents, servants, employees, and attorneys, including those who are acting or claiming to act on Defendants' behalf, and other persons who are in active concert or participation with such Defendants officers, agents, servants, employees, and attorneys (collectively "Defendant's Agents") from further acts of infringement of '979 patent, including

an order prohibiting defendants from making, using, selling, or offering to sell any product that infringes or resulted from the infringement of the '979 patent or colorable imitations;

C.        Enter an Order preliminarily and permanently enjoining Defendants and Defendants' Agents from disclosing, revealing, using, showing, or otherwise disseminating any and all of JM's trade secret and confidential information;

D.        Enter judgment in favor of JM and against Defendants for damages (including reasonable royalties and/or lost profits, as well as general, special, consequential, incidental, exemplary, punitive, and/or treble) in an amount to be determined at trial;

E.        Enter judgment in favor of JM and against Defendants for pre-judgment interest and post-judgment interest, as provided by law;

F.        Enter judgment in favor of JM and against Defendants for JM's reasonable costs and attorneys' fees, as provided by statute or otherwise as provided by law; and

G.        Enter judgment awarding such other and further legal and/or equitable relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, JM hereby demands a trial by jury of all issues so triable.

Dated:  March 13, 2015              By:
                                                     _s/ B. Jefferson Boggs_____
                                                     **_B. Jefferson Boggs_** (admitted in District of Colorado)
                                                     MERCHANT & GOULD PC
                                                     1701 Duke Street, Suite 310
                                                     Alexandria, Virginia 22314
                                                     Telephone: (703) 684-2500
                                                     Facsimile: (612) 332-9081

E-mail: JBoggs@merchantgould.com

**Rachel C. Hughey** (admitted in District of Colorado)
MERCHANT & GOULD PC
3200 IDS Center
80 S. Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081
E-mail: RHughey@merchantgould.com

**Michael S. Wagner** (admitted in District of Colorado)
MERCHANT & GOULD PC
1801 California Street
Suite 3300
Denver, CO 80202-2654
Telephone: (303) 357-1670
Facsimile: (612) 332-9081
E-mail: MWagner@merchantgould.com

*Attorneys for Plaintiffs Johns Manville Corporation and Johns Manville*

Plaintiffs' Address:
717 17th Street, Denver, Colorado 80202