IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-00531-RBJ-KLM

JOHNS MANVILLE CORPORATION, a Delaware corporation, and
JOHNS MANVILLE, a Delaware corporation,

    Plaintiffs,

v.

KNAUF INSULATION, LLC, a Delaware corporation,
WALTER A. JOHNSON, individually, and
KHAUF INSULATION GMBH, a German corporation,

    Defendants.

---

ORDER ON MOTION FOR NEW TRIAL

---

On November 9, 2017 the jury rendered its verdict in case no. 15-CV-00531-RBJ in favor of the defendants (collectively "Knauf"). Although the jury found that Knauf had not proved its affirmative defense of the statute of limitations, the jury also found that the plaintiffs (collectively "JM") did not prove their claim of misappropriation of trade secrets as it related to the GX-4[1] super alloy formula, testing data associated with JM super alloys, or refining or casting purchase specifications. *See* ECF No. 308 at 1–2. The Court subsequently entered its final judgment on November 13, 2017. ECF No. 313.

---

[1] This alloy is referred to as GX-4 by JM and RM-4 by Knauf.

On December 11, 2017 JM filed a motion asking the Court to grant a new trial on the grounds that Exhibit 714 was improperly entered at trial.[2] ECF No. 319. This motion has been fully briefed. *See* ECF Nos. 323, 329. For the reasons stated herein, JM's motion is DENIED.

## STANDARD OF REVIEW

A motion for a new trial is governed by Rule 59 of the Federal Rules of Civil Procedure. A court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "A district court has broad discretion in deciding whether to grant a motion for a new trial." *Harvey By & Through Harvey v. Gen. Motors Corp.*, 873 F.2d 1343, 1346 (10th Cir. 1989). A jury verdict will only be set aside on the basis that evidence was admitted in error when the resulting error prejudicially affects a substantial right of a party. *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998). An error in the admission of evidence is prejudicial only if "'it can be reasonably concluded that with or without such evidence, there would have been a contrary result.'" *Id.* (citing *Hinds v. General Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993)).

## ANALYSIS

JM asserts that the Court erred in admitting Exhibit 714, an email from Dr. Walter Johnson to his colleagues at Knauf in which he conveyed the conclusion that the RM-4 alloy was "free to practice." ECF No. 319-4. In its original unaltered form, this email was evidently Dr. Johnson's note accompanying an attached legal opinion from Knauf's outside counsel that Dr. Johnson forwarded to several Knauf employees. *See* ECF No. 319-8 at 2. In the version of the exhibit shown to the jury, however, the attachment and subject line "FW: Analysis - Freedom to Operate Inquiry of a Cobalt-Based Alloy" were removed, but there was no indication that such

---

[2] As Knauf notes, Exhibit 714 relates only to the GX-4 trade secret claim, rather than to either of JM's other alleged trade secret claims. ECF No. 232 at 2. As such, even if the admission of Exhibit 714 were an error, any new trial would only involve the GX-4 trade secret claim.

2

an alteration had occurred. *See id.* As a result, according to JM, Knauf represented to the jury that this document conveyed Dr. Johnson's independent conclusion while also insinuating that his statement reflected an undisclosed opinion of counsel. ECF No. 329 at 2.

JM contends that because Knauf chose not to waive the attorney-client communication privilege afforded to the opinion of counsel, it could not also introduce that opinion via Dr. Johnson's summary. JM refers to this tactic as the "sword and shield" use of privilege: Knauf allegedly used the shield of privilege to protect the actual opinion from discovery while also using the content of the opinion as a sword to defeat JM's claim of misappropriation. ECF No. 319 at 2. JM thus argues that allowing Exhibit 714 to be introduced at trial was reversible error warranting a new trial.[3] ECF No. 329 at 2.

Knauf counters that the parties' pre-trial stipulation No. 1 forecloses any objections to the use of Exhibit 714 at trial. This stipulation provides that:

> No Knauf witness shall refer to the existence of or the contents of any opinion of counsel that relates to or references Knauf's RM-4 Alloy provided by Dr. Johnson to Knauf (the "Opinion of Counsel"). This specifically includes Document No. 724 on Knauf's Privilege Log. No Knauf witness shall imply, suggest, or indicate in any way that the Opinion of Counsel exists. Counsel for Knauf shall not introduce any exhibit that references or implies the existence of the Opinion of Counsel, and will explicitly instruct and admonish all witnesses it calls at trial that are under Knauf's control to testify in accordance with this stipulation. **Notwithstanding the above, exhibits or testimony regarding Dr. Johnson's representations that RM-4 or other technologies were "free to practice," free to use, or in the public domain may be offered without referring to the Opinion of Counsel.**

ECF No. 249 (emphasis added). Knauf contends that this stipulation "expressly permitted" Knauf's use of the redacted version of exhibit 714. ECF No. 232 at 2. I agree.

JM argues that Knauf stipulated that "it would not introduce any exhibit that references the opinion of counsel," and that as a result, JM "prepared for trial with the understanding that

---

[3] JM raised its objection to the introduction of Exhibit 714 three times at trial, including once before opening arguments. *See* ECF No. 319 at 7.

Knauf would not rely on any opinion of counsel in this case." ECF No. 319 at 12. It is true that the parties agreed that Knauf would not "imply, suggest, or indicate in any way that the Opinion of Counsel exists," and would not "introduce any exhibit that references or implies the existence of the Opinion of Counsel." ECF No. 249 at 1. However, Knauf did not violate this portion of the stipulation, since it never used or referenced an opinion of counsel. Instead, as it was permitted to do according to the last sentence in the stipulation, Knauf introduced an "exhibit[] or testimony regarding Dr. Johnson's representations that RM-4 . . . [was] 'free to practice,' . . . without referring to the Opinion of Counsel." *Id.* Given the clear language of the stipulation, JM should have prepared for trial with the understanding that Knauf would rely on Dr. Johnson's email after redacting its references to the opinion of counsel, exactly as Knauf did.

JM's cited precedent does not support its argument. For example, JM points to *Batchelor v. Geico Cas. Co.*, 142 F. Supp. 3d. 1220, 1244 (M.D. Fla. 2015), in which the court recognized the "manifest unfairness" that "occurs when an opposing party is deprived of privileged information after a selective disclosure" of such information at trial. However, in *Batchelor*, unlike in this case, Geico asserted the attorney-client communications privilege aggressively during litigation but then presented testimony referencing those privileged communications for the first time at trial. *Id.* The court thus ordered a retrial because the plaintiff had not had a fair opportunity to review and use the documents Geico presented at trial. *Id.* at 1245. In this case, in contrast, Knauf did not assert the privilege with respect to Dr. Johnson's statement and then surprise JM at trial with that statement. Instead, Knauf's use of Dr. Johnson's statement was expressly agreed upon by the parties in their pre-trial stipulation. JM cannot in good faith argue that it was surprised or disadvantaged by the use of the statement at trial.

4

I am similarly unconvinced by JM's reference to *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695 (10th Cir. 1998). In that case the plaintiff's counsel from an underlying lawsuit was compelled to testify and provide evidence against the plaintiff in a subsequent indemnity suit despite the plaintiff's asserting the attorney-client and work product privileges. *See Frontier* 136 F.3d at 698–99. The Tenth Circuit found that the admission of such evidence was improper, noting that "[a]lthough similar evidence may have been admitted through other witnesses, there is a qualitative difference between evidence received from Frontier's own attorneys and evidence received from other witnesses. There is too great a risk that a jury would accord significant or undue weight to the testimony and admissions of a party's own lawyer." *Id.* at 706. In this case, unlike in *Frontier*, Knauf redacted any references to the opinion of counsel when it presented Exhibit 714, a fact that JM's counsel conceded. *See* ECF No. 323-2 at 3 ("[T]hey've redacted this document making it clean so it doesn't have any reference to an attachment or to the opinion of counsel."). As such, the risk highlighted in *Frontier* that a jury might improperly weigh an attorney's testimony or work product was not present in this case.

Finally, JM's use of *American Economy Insurance Co. v. Schoolcraft*, No. 05-CV-01870-LTB-BNB, 2007 WL 1229308 (D. Colo. April 25, 2007) is similarly inapt. In that case, the Court noted that because an insurance company had put various matters at issue in litigation, it could not assert the attorney-client privilege to "unfairly deny" its opponent "access to information necessary to its defense" of the claims. 2007 WL 1229308 at *4. Unlike in *Schoolcraft*, however, Knauf did not put the opinion of counsel at issue in this case, relying instead on Dr. Johnson's statement that the alloy was free to practice. Moreover, JM did not need access to the opinion of counsel to pursue its claims against Knauf. Instead, as the parties stipulated before trial, the opinion of counsel was not at issue, but Dr. Johnson's statement was,

5

and both parties were free to present evidence and testimony regarding his statement without referring to the opinion of counsel. ECF No. 249.

JM nevertheless contends that Dr. Johnson's statement did not fit into the stipulation's allowance for "Dr. Johnson's representations that RM-4 . . . [was] 'free to practice,'" but instead that his statement was "the conclusion of Knauf's outside counsel." ECF No. 319 at 6. In making this argument, JM apparently now invokes a higher standard for assessing Dr. Johnson's statement than was contemplated in the stipulation. *See id.* at 7 (arguing that the statement "does not reflect Dr. Johnson's independent analysis, but instead demonstrates his communication of the conclusion of the opinion of counsel."). As is evident from language of the stipulation, however, the parties did not agree that only exhibits regarding Dr. Johnson's *independent analysis* could be offered, but instead they stipulated that *any exhibits* regarding his representation to that effect were admissible. *See* ECF No. 249 at 1. Exhibit 714 fits that description, so JM may not now renege on its stipulation by imposing stricter requirements on Dr. Johnson's statement.

Additionally, JM's contention that Knauf should have instead offered some other "independent analysis" from Dr. Johnson or some other version of the statement to the same effect is belied by JM's admission that Exhibit 714 "is the only document in the record that was both sent by Dr. Johnson and claims that the JM's [sic] GX-4 allow was 'free to practice.'" ECF No. 319 at 7; *see also* ECF No. 319-6 at 12 (counsel for JM stating in court that "[t]his is the only document[,] the only written piece of paper anywhere I'm aware of in this record where Dr. Johnson has said to them we are free to practice."). The stipulation's express allowance for exhibits regarding this statement would be meaningless if it did not apply to the concededly singular piece of evidence conveying Dr. Johnson's statement.

6

JM further argues that despite redacting Exhibit 714 to remove references to the opinion of counsel, Knauf actually "endow[ed] the key language 'free to practice' with the imprimatur of legal opinion." ECF No. 329 at 3. In particular, JM asserts that Knauf deliberately associated Exhibit 714 with Exhibit 1261 "to induce the jury to believe that Dr. Johnson's 'free to practice' conclusion was a reflection of an undisclosed opinion of counsel." ECF No. 329 at 1; *see also* ECF No. 319 at 8–9. Exhibit 1261 is a slide presentation relating to the development of Knauf's spinner alloys. *See* ECF No. 319-7. One of the slides contains the header "Legal," under which are the following bullet points:

- All Vendors Signed New NDA
- Electron Beam Drilling – Free to Practice
- Investment Casting of Spinners – Free to Practice
- Three (3) Potential Alloys – Free to Practice
  - Designed Experimental Alloys – Free to Practice

*Id.* at 4. JM argues that Knauf purposefully tied the "legal 'free to practice' opinions for other alloys referenced in [Exhibit] 1261" to "cause the jury to associate Dr. Johnson's opinion of 'free to practice' in [Exhibit] 714 with the 'free to practice' legal opinions referenced in [Exhibit] 1261." ECF No. 319 at 8–9. This conclusion stretches credulity.

For one thing, even if a juror had independently made the connection between Exhibits 714 and 1261 at trial (which seems unlikely given the tenuous thread between them as outlined by JM at ECF No. 319 at 8–9), it is not evident that a reasonable juror would believe the statements in Exhibit 1261 were necessarily opinions of counsel. During his testimony introducing Exhibit 1261, Dr. Johnson explained his understanding of the basis for the conclusion "free to practice" on the slide. ECF No. 319-6 at 28–29. He indicated that he "imagine[d] it was" a legal opinion with respect to "electron beam drilling;" that for the "investment casting of spinners" the conclusion was "experience based;" and that for the alloys

7

the conclusion "was a combination of experience and legal opinion." *Id.* The jury was thus presented with a non-lawyer's speculation that a legal opinion was potentially a factor in reaching the conclusion "free to practice." If the conclusion had instead been presented in a legal memorandum or clearly ascribed to counsel, for example, JM's argument might have more merit. However, as it stands, there is no clear indication that the "free to practice" notations in the slide deck were opinions of counsel.

JM's assertion that the jury must have concluded that Dr. Johnson's statement "free to practice" in Exhibit 714 was based on an opinion of counsel also fails for a practical reason. Knauf did not *need* to give Dr. Johnson's statement the "imprimatur of legal advice" for the jury to conclude that the Knauf employees who had received Dr. Johnson's email believed him and acted accordingly, i.e., as though the formula were free to practice. Knauf witnesses testified that they believed and trusted Dr. Johnson's conclusions, and there is no reason the jury would have assumed or inferred that these individuals did so only because they thought Dr. Johnson spoke with legal authority. *See, e.g.*, ECF No. 319-6 at 37 (Mr. Wlodarczyk testified that he relied on "Dr. Johnson's expertise when he told [him] that RM-4 was free to practice."). I am thus unconvinced that Knauf created a connection between Exhibits 714 and 1261 in order to encourage the jury to infer that Dr. Johnson's statement was a surrogate for a legal opinion.

I note that Knauf witnesses who received Dr. Johnson's email, and thus knew of its initial connection with a legal opinion, testified that they took Dr. Johnson's statement at face value without needing to see any further analysis. *See* ECF No. 319 at 9. This might reflect their desire to comply with the stipulation. Similarly, JM's questioning seemed more intent on ensuring, consistent with the stipulation, that no witness testified as to the opinion of counsel. *See* ECF No. 319-6 at 29 (counsel for JM questioning Dr. Johnson about Exhibit 714 to confirm

8

that "[t]here's no analysis" . . . "[t]here's no discussion" . . . "[t]here's no explanation" . . . "[o]f why you said it's free to practice?").

I also note that, in an apparent effort to comply with the stipulation, Knauf redacted the subject line to hide the nature of the email without any indication that such a redaction had occurred. Perhaps that points to problems inherent in the parties' stipulation, but if JM was concerned about the redaction of the subject line, it could have addressed that matter on cross-examination. The bottom line is that even if I were to assume for the sake of argument that the one memo might have changed the outcome of a lengthy and complex trial, I do not find that Knauf failed to comply with the parties' stipulation.

## ORDER

Because the admission of Exhibit 714 in its redacted form comported with the parties' pre-trial stipulation, the Court concludes that plaintiffs have not identified any basis on which the Court should order a new trial. As a result, JM's motion for a new trial, ECF No. 319, is DENIED.

DATED this 12th day of February, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge