IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-00531-RBJ-KLM

JOHNS MANVILLE CORPORATION, a Delaware corporation, and
JOHNS MANVILLE, a Delaware corporation,

    Plaintiffs,

v.

KNAUF INSULATION, LLC, a Delaware corporation,
WALTER A. JOHNSON, individually, and
KHAUF INSULATION GMBH, a German corporation,

    Defendants.

**ORDER ON DEFENDANT'S MOTION TO REVIEW CLERK'S TAXATION OF COSTS**

Defendants Knauf Insulation, Inc. and Knauf Insulation GmbH seek review of two aspects of the Clerk's award of costs to them: (1) the exclusion of expert witness fees; and (2) the exclusion of a portion of defendants' electronic discovery costs. The motion is granted in part and denied in part.

**PERTINENT BACKGROUND**

Plaintiffs ("JM") sued defendants ("Knauf") in federal court for misappropriation of trade secrets in violation of the Colorado Uniform Trade Secrets Act. Federal jurisdiction was based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). The jury rendered its verdict in favor of Knauf. As the prevailing party Knauf was awarded costs to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Knauf's final bill of costs totaled $996,297.24. ECF No. 326. This included $585,422.51 in expert witness fees and $253,883.05 in e-discovery costs. *See* ECF No. 326-1 at 21, 35. JM opposed any award of expert witness fees and opposed all but $23,493.89 of the e-discovery costs. ECF No. 322 at 1-2.[1]

The Clerk awarded $172,700.77. ECF No. 342. The award did not include any expert witness fees, as the Clerk found that they were preempted by federal statutes and cases. *Id.* at 28-31. The Clerk awarded $23,963.77 for e-discovery costs, being the sum of the amount JM did not dispute plus sales tax stipulated by the parties. *Id.* at 2, 19. The Clerk rejected the remainder of the claimed e-discovery costs, apparently agreeing with JM that they were not recoverable under 28 U.S.C. § 1920(4) (permitting taxation of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.").

In the pending motion Knauf asks the Court to reverse the Clerk's denial of its claimed $585,422.51 in expert witness fees and the Clerk's exclusion of the remainder of its claimed e-discovery costs. ECF No. 346. JM has filed its opposition, ECF No. 350, and Knauf has filed a reply. ECF No. 353.

## FINDINGS AND CONCLUSIONS

**A. <u>Expert Witness Fees</u>.**

The dispute concerns Knauf's entitlement to an award of expert witness fees, not the reasonableness of the amount claimed. Knauf's position is based on the undisputed facts that on March 2, 2016 Knauf offered to settle the case for $100,000, but JM did not accept the offer. *See*

---

[1] Knauf filed an initial and two revised "proposed" bills of costs. ECF Nos. 315, 317 and 318. JM then filed its opposition. ECF No. 322. After meeting and conferring, Knauf filed its final "proposed" bill of costs. ECF No. 326.

2

ECF Nos. 327-1 and 327-2. Knauf asks the Court to award expert witness fees pursuant to Colo. Rev. Stat. § 13-17-202, which in pertinent part provides as follows:

> (1)(a) . . . in any civil action of any nature commenced or appealed in any court of record in this state:
> . . .
> (II) If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff.
> . . .
> (b) For purposes of this section, "actual costs" shall not include attorney fees but shall mean costs actually paid or owed by the party, or his or her attorneys or agents, in connection with the case, including but not limited to filing fees, subpoena fees, reasonable expert witness fees, copying costs, court reporter fees, reasonable investigative expenses and fees, reasonable travel expenses, exhibit or visual aid preparation or presentation expenses, legal research expenses, and all other similar fees and expenses.

Knauf argues that because its actual costs included reasonable expert witness fees, a category expressly included within the statute's mandate, the Clerk erred in not awarded those costs.

In *Garcia v. Wal-Mart Stores, Inc.,* 209 F.3d 1170 (10th Cir. 2000) the court held that when this section is invoked in a diversity case, the court must award the defendant its actual costs "to the extent they constitute 'costs other than attorney's fees' under Fed. R. Civ. P. 54(d)(1) and *are not preempted by a federal statute such as 28 U.S.C. § 1821*, and to the extent, if at all, they constitute 'related non-taxable expenses under Fed. R. Civ. P. 54(d)(2)." *Id.* at 1178-79 (emphasis added).

The problem lies in the carve-out for costs "preempted by a federal statute such as 28 U.S.C. § 1821." Section 1821 provides that witnesses shall be paid a $40 per day attendance fee and specified travel and subsistence expenses. Another federal statute, 28 U.S.C. § 1920, lists costs that may be taxed pursuant to an award under Fed. R. Civ. P. § 54(d). Subsection (3)

3

includes fees of "witnesses," and subsection (6) allows compensation of "court appointed experts." Those "statutory costs" do not include a litigant's expert witness fees. *Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir. 1983). "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987).

For these reasons courts in this district have not included expert witness fees in awards of actual costs pursuant to Colo. Rev. Stat. § 13-17-202. *Arrington v. Chavez,* No. 12-cv-00172, 2015 WL 1931982, at *2 (D. Colo. April 28, 2013); *Phillips v. Morris,* No. 13-cv-01105-REB-MJW, 2014 WL 7051722, at *3 (D. Colo. Dec. 12, 2014); *Bullock v. Wayne,* No. 08-cv-00339, 2010 WL 1258038, at *2 (D. Colo. March 29, 2010). *See also Grabau v. Target Corp.,* No. 06-cv-01308-WDM-KLM, 2009 WL 723340 at *1 (D. Colo. March 18, 2009) ("the *Garcia* court makes clear than expert witness fees are still preempted by federal statute"). I recognize that there is one case in this district to the contrary. *Squires v. Breckenridge Outdoor Education Center,* No. 10-cv-00309-CBS-BNB, 2013 WL 1231557, at *4 (D. Colo. March 27, 2013). However, I agree with the majority's interpretation of *Garcia.*

Accordingly, the Court denies Knauf's request that this Court award expert witness fees as part of its actual costs.

**B. E-Discovery Costs.**

Knauf asks the Court to award additional e-discovery or ESI costs under two theories: first, that the Clerk erred in his assessment of the amount of ESI costs that were covered by 28 U.S.C. § 1920(4); and second, in the alternative, at least the ESI costs Knauf incurred after JM declined Knauf's offer of settlement should be awarded.

1. <u>Are Knauf's additional ESI costs taxable under 1920(4)?</u>

On the face sheet of Knauf's bill of costs it claimed $6,286.04 as "Fees for exemplification and copies of papers obtained for use in the case," the category provided by § 1920(4). ECF No. 326 at 1. But in an attachment Knauf asked that the Clerk also tax $253,883.05 of ESI costs, apparently classifying that amount as additional copying costs. ECF No. 326-1 at 10-20. The Clerk taxed a portion of that amount, $23,963.77, comprised of $7,704.99 in scanning costs, $15,788.90 in costs of conversion to TIFF or PDF formats, and $469.88 in sales tax on those amounts. *See* Motion, ECF No. 346, at 8 n.10. JM does not dispute the taxation of those costs.

The Clerk's decision was consistent with the holdings of courts in this district. In *Nero v. American Family Mut. Ins. Co.,* No. 11-cv-0217, 2013 WL 5323262 (D. Colo. Sept. 23, 2013) Judge Brimmer limited the costs recoverable under § 1920(4) to "the amount spent on loading data into an electronic database and converting files to TIFF or PDF formats." *Id.* at *3. Similarly, in *Medina v. Catholic Health Initiatives,* No. 13-cv-01249-REB-KLM, 2017 WL 219314 (D. Colo. Jan. 17, 2017), Judge Blackburn determined that ESI costs covered by § 1920(4) are those attributable to (1) scanning of hard copy documents; (2) conversion of native files to other formats, such as Tagged Image File Format ('TIFF') or Portable Document Format ('PDF"); and (3) transferring electronic documents to a CD or DVD." *Id.* at *3 n.7.[2]

These cases are consistent with cases in other jurisdictions. For example, in *Race Tires America, Inc. v. Hoosier,* 674 F.3d 158 (3d Cir. 2012) the court concluded that "[n]either the

---

[2] *See also Chung v. El Paso School District,* No. 14-cv-01520-KLM, 2015 WL 7253334, at *10 (D. Colo. Nov. 17, 2015) (affirming the Clerk's taxation of $597.50 in ESI costs for loading documents into an electronic data base); *Comprehensive Addiction Treatment Center, Inc. v. Leslea,* No. 11-cv-03317-CMA-MJW, 2015 WL 638198, AT *2 (D. Colo. Feb. 13, 2015) (affirming the Clerk's taxation of the cost of hiring a third-party vendor "to retrieve and restore ESI" for production in discovery).

language of § 1920(4), nor its history, suggests that Congress intended to shift all the expenses of a particular form of discovery – production of ESI – to the losing party." *Id.* at 171. Rather, "of the numerous services the vendors performed, only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD involved 'copying,'" and therefore, "the costs attributable to only those activities are recoverable under § 1920(4)'s allowance for the 'cost of make copies of any materials.'" *Id.* at 171.

In *CBT Flint Partners, LLC v. Return Path, Inc.,* 737 F.3d 1320, 1328 (Fed. Cir. 2013), the court held that § 1920(4) covers "costs necessary to duplicate an electronic document" in the manner required by rule, by court order, or agreement of the parties.). The court listed vendor services that could not be classified as copying costs: project management; keyword searching; statistical previews; auditing and logging of files; ensuring compliance with Federal rules; extraction of proprietary data; acquiring, installing, and configuring a new data-hosting server; litigation support tasks such as training in the use of document-review software, deposition support, or production and privilege-leg creation; activities on the vendor's invoices, such as meetings, conference calls, and other communications; keyword searching and data analysis performed by a vendor at the request of an opponent; costs of decryption of a document stored in encrypted form; or "deduplication" to eliminate duplicate copies. *Id.* at 1330-31. Importantly, the court recognized that some of these services might be <u>related to</u> the copying process, but because they were not the <u>making of copies</u>, they were not taxable under § 1920(4). *Id.* at 1331.

In *Country Vintner of North Carolina, LLC v. E.&J. Gallo Winery, Inc.,* 718 F.3d 249, 260 (4th Cir. 2013), the court limited ESI costs taxable under 1920(4) to the costs of "converting electronic files to non-editable formats, and burning the files onto discs." The court

acknowledged that the defendant "will recover only a fraction of its litigation costs under our approach." *Id.* at 261.

Although the Clerk's taxation of ESI costs was in line with these authorities, Knauf argues that an additional $230,389.16 of ESI costs that it submitted to the Clerk should also have been taxed. ECF No. 346 at 9. However, with respect to the majority of those costs, I find that Knauf has not shown that they were in fact "costs of making copies of any materials where the copies are necessarily obtained for use in the case."

The largest category of the disputed ESI costs is labeled "Collecting, importing, and processing ESI." Knauf informs the Court that this category is comprised of $21,716.60 in "collection fees," $3,075.00 to purchase hard drives, $551.20 to ship hard drives to a vendor, and $152,518.53 to load ESI onto the vendor's database. *Id.* at 9. In support Knauf notes that Judge Brimmer recognized "the cost of initially uploading data," also described as "the amount spent on loading data into an electronic database," as taxable. *Id.* (quoting *Nero,* 2013 WL 5323262 at *2, *3). Knauf then broadly describes all of these amounts as costs of "initially uploading data" and "loading data into an electronic database." *Id.* But the nature and purpose of these costs requires a certain amount of technical expertise, and Knauf provides no evidence or even a convincing explanation as to how these services are part of the actual making of copies. Rather, its argument essentially amounts to *ipse dixit* – it is so because Knauf says that it is so. That isn't good enough.

Another category is "Conversion to searchable/OCR format," or simply, "OCR Conversion." Knauf states that "JM insisted that the parties use keyword terms to review ESI and identify potentially responsive documents for production," which in turn required Knauf to perform optical character recognition on non-searchable documents to convert them to a

7

searchable format. *Id.* at 10. But that sounds a lot like a category of ESI that the Federal Circuit expressly excluded in *CBT Flint Partners* -- keyword searching and data analysis performed by a vendor at the request of an opponent.

The exception is Knauf's category called "Electronic embedding and load the creation" and more simply, "Load Files" in Knauf's motion. The same category is labeled "Electronic Embedding/Indexing Attachment Rante" in Knauf's attached chart itemizing its ESI costs. Knauf defines a load file as "essentially a copy of start-stop information in a record and any metadata that must be produced with ESI." *Id*. Knauf represents that "JM through is auditors insisted on receiving a complete copy of all ESI collected from Knauf, including metadata." *Id.* at 12. JM did not dispute that representation in its response. ECF No. 350. In *CBT Flint Partners* the court stated, "[t]o the extent that a party is obligated to produce (or obligated to accept) electronic documents in a particular format or with particular characteristics intact (such as metadata, color, motion, or manipulability), the costs to make duplicates in such a format or with such characteristics preserved are recoverable as 'the costs of making copies . . . necessarily obtained for use in the case.'" 737 F.3d at 1328. That appears to describe this category of Knauf's ESI costs. Accordingly, I find that the costs in this category are taxable under 28 U.S.C. § 1920(4)

However, I also find from Knauf's itemization that all but $2,425.62 of the costs in this category were incurred in or after March 2016. *See* ECF No. 346-1 at 6. Because I am awarding all ESI costs incurred after JM declined Knauf's settlement offer, *see infra* at 9, I will award only the pre-March 2016 costs in this category, plus a proportionate amount of the sales tax which I have calculated to be $24.85, to avoid duplication. Total: $2,450.47.

Knauf's category "FTP uploading" would be another exception that I would allow. However, the nominal cost assigned to this category, $75.00, was incurred after March 2016. *See* ECF No. 146-1 at 6. Therefore, it is excluded here to avoid duplication.

In sum, the Court has no reason to doubt that all of Knauf's claimed costs were reasonably incurred as part of the ESI process in this document-intensive case. At least some of them are likely <u>related to</u> the copying process. But, with the exceptions noted above, the Court finds that Knauf has not carried its burden of showing that these additional costs are the costs of <u>making copies</u>.

2. <u>Are any of the additional ESI Costs awardable under Colo. Rev. Stat. § 13-17-202</u>?

Here, I agree with Knauf. The 10th Circuit made it clear in *Garcia* that the district court should apply the sanction of this state statute unless it is preempted by a federal statute such as 28 U.S.C. § 1821. Section 1821 did preempt the awarding of expert witness fees, as it (and § 1920(6)), gave specific directions as to what witness fees are allowed. But JM does not point to any federal statute that preempts the awarding of ESI costs; indeed, JM did not respond to Knauf's argument at all. Knauf represents that $31,786.94 of the ESI costs that were not taxed by the Clerk were incurred after March 2, 2016, the date of its settlement offer. JM has not disputed that either. Accordingly, the Court awards that additional amount as part of Knauf's "actual" costs pursuant to Colo. Rev. Stat. § 13-17-202.[3]

**ORDER**

Knauf's motion to review is GRANTED IN PART AND DENIED IN PART. It is granted to the extent that the Court orders JM to reimburse Knauf in the additional amounts of $2,450.47 pursuant to 28 U.S.C. 1920(4) and $31,786.94 pursuant to Colo. Rev. Stat. § 13-17-

---

[3] I note that this is not a reversal of the Clerk's taxation decision. The Clerk applied 28 U.S.C. § 1920 properly. Awarding costs under the state statute was not part of the Clerk's function.

9

202.  The motion is otherwise denied.  An Amended Final Judgment will issue with the following final paragraph in place of the final paragraph in the original Final Judgment:

"FURTHER ORDERED that the defendants are awarded (1) costs as the prevailing party, pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. 1920 in the amount of $26,414.24 , and (2) costs pursuant to Colo. Rev. Stat. § 13-17-202 in the amount of $31,786.94. "

DATED this 25th day of May, 2018.

BY THE COURT:

R. Brooke Jackson
United States District Judge